**In re FASTRAX, INC., Debtor.**

**Bankruptcy No. 90–9788–8P1.**

United States Bankruptcy Court,
M.D.Florida,
Tampa Division.

May 17, 1991.

Richard C. Prosser, Tampa, Fla., for debtor.

Southwest Research Institute, Maria Luisa Holmgreen, San Antonio, Tex., for respondent.

## ORDER ON MOTION TO ASSUME EXECUTORY CONTRACT

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 11 reorganization case and the matter under consideration is a Motion filed by Fastrax, Inc. (Debtor), who seeks authority to assume an executory subcontract with Southwest Research Institute (Southwest), who vigorously opposes the Debtor's assumption of the executory subcontract involved in this controversy. The facts which are relevant as established at the final evidentiary hearing are basically without dispute and can be summarized as follows:

Prior to the commencement of this Chapter 11 case, the Debtor entered into a contract (Prime Contract) with the United States of America, Department of the Air Force (Air Force). This contract provided inter alia that the Debtor would install a material handling system for the Air Force at Hill Air Force Base, Ogden, Utah. In connection with its Prime Contract, the Debtor entered into a fixed price subcontract (Subcontract) with Southwest. Under this contract Southwest agreed to produce and install at Hill Air Force Base a storage, retrieval and distribution computer system to be used in connection with the material handling system, to be established by the Debtor pursuant to its Prime Contract with the Air Force. Although the actual Subcontract was not offered in evidence at the final evidentiary hearing, it is without dispute that the general terms of the Subcontract are set forth in a proposal titled, "Development of Storage, Retrieval and Distribution System (SRDS) Software" and "Development of SRDS to DMMS Interface" submitted by Southwest to the Debtor on December 13, 1989. (Debtor's Exh. No. 1). It is without dispute that the Subcontract was in fact executed and Southwest commenced to perform according to the terms of the Subcontract.

The Debtor ultimately defaulted on the Subcontract by failing to make certain progress payments when they became due. On October 5, 1990, the Debtor filed its voluntary Petition initiating this Chapter 11 case. It is undisputed that Southwest has completed 50%–60% of its obligations of its Subcontract with the Debtor. It is further undisputed that as of the date of the final evidentiary hearing, Southwest had incurred total costs and fees of $201,972.31. The total amount to be paid to Southwest under the Subcontract is $270,204.00, $171,659.68 of which has been billed by Southwest. $128,053.68 of the $171,695.68 invoice has been paid. Thus, approximately $43,606.00 has been invoiced but not yet paid.

It should be noted at the outset, that on April 3, 1991, this Court entered an Order authorizing the Debtor to assume the Prime Contract, i.e., the Debtor's contract with the Air Force. Since the commencement of this case, the Debtor has received payments under the Prime Contract from the Air Force which include $43,600.00 for payment of the outstanding prepetition indebtedness due to Southwest. These funds are currently on deposit with NCNB of Texas pursuant to a deposit agreement dated March 19, 1990, entered into between the Debtor and Southwest. In addition to payments yet to be received under the Prime Contract, the Debtor anticipates receiving approximately $647,000.00 in May of 1991 from contracts other than the

Prime Contract. From the Prime Contract, the Debtor expects to receive a net total of $200,000 for work performed.

Inasmuch as Southwest's performance under the Subcontract is critical to the Debtor's performance under the Prime Contract, the debtor filed the Motion which is presently under consideration seeking to assume the Subcontract pursuant to 11 U.S.C. § 365. This section provides in pertinent part as follows:

§ 365. **Executory contracts and unexpired leases.**

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

In opposition to the Debtor's Motion to Assume, Southwest relies on § 365(c), which provides in pertinent part as follows:

§ 365. **Executory contracts and unexpired leases.**

(c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

(1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

(B) such party does not consent to such assumption or assignment; ...

■ Based on this, Southwest contends first that Fastrax, as the debtor-in-possession, is not the same party that Southwest contracted with to perform, therefore the Debtor has no cognizable interest in the contract sought to be assumed, and, consequently, the debtor-in-possession cannot assume this contract. While it is true that for certain purposes, the Debtor and debtor-in-possession are legally distinct entities, if this Court accepted the proposition urged by Southwest, § 365 would be rendered meaningless. Carrying this proposition to an extreme, no debtor could *ever* assume a contract, absent the contracting party's consent.

Next, Southwest contends that the Subcontract is a personal service contract which falls within the scope of § 365(c), and because § 365(c)(1)(A) & (B) provides that a debtor may not "assume *or* assign" this type of contract absent consent, the Debtor cannot assume the Subcontract because Southwest does not consent. Southwest relies on the literal reading of § 365(c)(1)(A) & (B) and contends that a debtor-in-possession may not assume an executory contract if applicable law excuses a party to the contract from accepting or rendering performance to an entity other than the debtor or the debtor-in-possession and if that party does not consent. Southwest contends this is so even if the debtor is able to comply with the prerequisites for assumption as set forth in § 365(b)(1)(A), (B) & (C). In support of this proposition Southwest cites *In the Matter of West Electronics*, 852 F.2d 79 (3d Cir.1988).

*In the Matter of West Electronics*, the 3rd Circuit Court of Appeals did in fact state that a debtor-in-possession is a separate and distinct entity from a debtor, who in that case had obtained a contract from the Government. In relying on *Thompson v. Comm'r of Internal Revenue*, 205 F.2d 73 (3d Cir.1953) the court in *West Electron-*

*ics* stated that the anti-assignment statute [41 U.S.C. § 15] was meant to secure to the Government the personal attention and services of the contractor; to render him liable to punishment for fraud or neglect of duty; and to prevent parties from acquiring mere speculative interests in the contract in question. Based on this, the court in *West Electronics* concluded inasmuch as the Government could not be compelled to accept performance from an entity other than with whom it originally contracted, by virtue of 41 U.S.C. § 15, the debtor-in-possession could not assume the contract in question. While this holding might facially support the proposition urged by Southwest, the proposition does not bear close analysis, and Southwest's reliance on *West Electronics* is totally misplaced for the following reasons.

First, the debtor is not seeking to assume an executory contract with the Government, as was the case in *West Electronics*, thus, the anti-assignment statute does not come into play. Second, this Court disagrees with the interpretation that in the context of non-government contracts, assignability of a contract without consent is a condition precedent to the debtor-in-possession's right to assume an unexpired executory contract. Third, even though § 365(c) speaks in the disjunctive and provides that a debtor may not assume or assign an unexpired executory contract without consent, a sensible construction of this section permits but one conclusion— that this section was designed solely to govern the debtor-in-possession's ability to assign a contract which it already assumed. In fact, § 365(c)(1)(A) was amended in 1984 by substituting the phrase "an entity other than the debtor or the debtor-in-possession" for the words "the trustee." 11 U.S.C. § 365(c)(1)(A) (Supp. II 1985). The legislative history for this change provides:

> This amendment makes it clear that the prohibition against a trustee's power to assume an executory contract does not apply where it is the debtor that is in possession and the performance to be given or received under a personal service contract will be the same as if no

petition had been filed because of the personal service nature of the contract. H.R.Rep. No. 1195, 96th Cong., 2d Sess. § 27(b) (1980). This comment clearly indicates that Congress did not intend § 365(c)(1) to preclude assumption of an otherwise nonassignable personal service contract if the performance to be given or received "will be the same as if no petition had been filed." Rather, § 365(c)(1) provides that a debtor-in-possession can assume a personal service contract that is nonassignable under state law as long as its performance is going to be the same as if no petition had been filed. Therefore, the hypothetical test established in *West Electronics* is clearly not appropriate under § 365(c)(1). *In re Cardinal Industries, Inc.,* 116 B.R. 964 (Bkrtcy.S.D.Ohio 1990).

■ The proposition that the debtor-in-possession is a different legal entity from a debtor is a non-sequitur in the context of § 365. While it is true that for certain purposes the debtor-in-possession is a legally distinct entity from a debtor, it is clearly a successor of interest of a debtor, and a debtor-in-possession is not required to obtain an assignment from the debtor in order to acquire all rights and assets of a debtor, including all rights under an unexpired executory contract. To accept the proposition urged by Southwest would prevent every debtor-in-possession to assume an unexpired executory contract, even the type of contract which would not involve a government contract, the type involved in *West Electronics*, or a personal services contract, which is the next proposition urged by Southwest.

A sensible reading of § 365 as a whole leaves no doubt that § 365(b)(1)(A), (B) & (C) sets forth the requirements for an assumption by a debtor-in-possession with an unexpired executory contract. § 365(c)(1)(A) & (B) is an exception to the debtor-in-possession's right to assume a contract. It follows from the foregoing that once a debtor-in-possession meets the requirements of § 365(b)(1)(A), (B) & (C), it is authorized to assume the contract in question unless the debtor-in-possession

seeks to assign the contract, which is certainly not the case in the present instance.

■ § 365(c)(1) was designed only to prevent a debtor-in-possession from assigning unexpired executory contracts including personal service contracts, which are ordinarily nonassignable by law. *See In re Rooster*, 100 B.R. 228, 232 (Bankr.E.D.Pa. 1989); *In re Pioneer Ford Sales, Inc.*, 729 F.2d 27 (1st Cir.1984). *See In re Compass Van & Storage Corp.*, 65 B.R. 1007 (Bankr.E.D.N.Y.1986) at 1007.

Even assuming for purposes of argument that Southwest is correct in its interpretation of § 365(c), this Court is satisfied that the Subcontract is not a personal service contract. Generally a personal service contract is one which "contemplates performance of contracted-for-duties involving the exercise of special knowledge, judgment, taste, skill or ability. These services are not assignable by the party under obligation to perform without the consent of the other contracting party." *In re Rooster, Inc., supra*, 100 B.R. at 232. Typical personal service contracts include a contract to paint a picture, and a contract between an author and his publisher. As noted by the court in *In re Compass Van, supra*, 65 B.R. at 1011, citing 6A C.J.S. Assignments § 32 (1975)

> The mere fact, however, that a contract calls for the performance of labor or service is not sufficient to render it nonassignable, if, from a consideration of the entire contract, it appears that personality is not an essential consideration, and that only a certain object or result is contracted for and not the personal labor or services of the promisor. Whether a contract requires the personal services of the contracting party depends on the intention of the parties as shown by the language and subject matter of the contract viewed in light of surrounding circumstances.

■ Thus the determination of whether a contract is personal depends on the nature and subject matter of the contract, the circumstances surrounding the contract, and the intention of the parties. *In re*

*Taylor Manufacturing*, 6 B.R. 370 (Bankr. N.D.Ga.1980).

This Court is satisfied that the Subcontract is not a personal service contract. Although Southwest may be the party best suited to render performance, the Subcontract is not dependent on any special personal relationship, special knowledge or unique skill or talent possessed only by Southwest. There is no reason that the Subcontract could not be performed by another computer software company.

■ Having concluded that the Subcontract is assumable, this Court must address Southwest's final argument that the Debtor has not cured the defaults under the Subcontract, has not provided adequate assurance that the Debtor will promptly cure the defaults; has not compensated or provided adequate assurance that the Debtor will promptly compensate Southwest for actual pecuniary losses resulting from the default; and cannot provide adequate assurance of future performance.

This Court is satisfied that Southwest's final argument is likewise without merit. The Debtor has on deposit funds in an amount virtually equal to the existing arrears under the Subcontract. These funds can and should be released immediately to Southwest. Therefore, the Debtor can promptly cure its monetary defaults under the Subcontract.

Further, based on payments which the Debtor should receive in May of this year, the Debtor should be able to cure all other pecuniary damages sustained by Southwest due to the Debtor's default in the Subcontract. Southwest contends that the "stop start" costs associated with completing the Subcontract total $45,074.00. This estimate includes compensation for 588 man hours at a total direct labor cost of $17,303.00, overhead of $20,071.00, "cost of facility capital" of $2,094.00, and a fee of $5,606.00. (Debtor's Exh. No. 2). Of this estimate, this Court is satisfied that the Debtor should compensate Southwest for the direct labor cost of $17,303.00. However, the Debtor should not be compelled to compensate Southwest for its overhead

costs, the capital cost of $2,094.00, or the fee of $5,606.00.

This leaves for consideration whether the Debtor has provided adequate assurance of future performance under the Subcontract. Based on the Debtor's assumption of the Prime Contract, coupled with the total payments the Debtor will receive under the Prime Contract and other contracts within the next few months, it is this Court's considered opinion that the Debtor has, in fact, provided adequate assurance of its ability to perform under the Subcontract through its completion.

In accordance with the foregoing, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Assume Executory Contract be, and the same is hereby, granted, and the Debtor is authorized to assume the Subcontract with Southwest. It is further

ORDERED, ADJUDGED AND DECREED that the Debtor is hereby directed to release the sum of $43,606.00 to Southwest within five (5) days of the date of the entry of this Order. It is further

ORDERED, ADJUDGED AND DECREED that the Debtor is hereby directed to pay to Southwest the sum of $17,303.00 within fifteen (15) days of the date of the entry of this Order. It is further

ORDERED, ADJUDGED AND DECREED that in the event the Debtor fails to comply with the terms of this Order, upon the submission of an affidavit of default by Southwest, and 24 hours' telephonic notice by Southwest to the attorneys for the Debtor, this Court will enter an ex parte Order vacating this Order and denying the Motion to Assume the Executory Contract.

DONE AND ORDERED.