4 F.3d 984
 62 USLW 2183
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In Re: D. F. ANTONELLI, Jr.; Judith D. Antonelli, Debtors.
Kingdon GOULD, Jr.; Mary T. Gould, Plaintiffs-Appellants,
v.
D. F. ANTONELLI, Jr.; Judith D. Antonelli; The Official
Committee of Unsecured Creditors,
Defendants-Appellees.
 No. 92-2541.
 United States Court of Appeals,
Fourth Circuit.
 Argued: July 13, 1993.
Decided: August 23, 1993.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, District Judge. (CA-92-3286-JFM, BK-91-4-254-PM, BK-91-4-255-PM)
 Argued: James Carol Olson, Ballard, Spahr, Andrews & Ingersoll, Baltimore, Maryland, for Appellants.
 Richard P. Schifter, Arnold & Porter, Washington, D.C., for Appellees.
 On Brief: Nancy Virginia Alquist, Robert Alan Weber, Ballard, Spahr, Andrews & Ingersoll, Baltimore, Maryland, for Appellants.
 Andrew T. Karron, Richard M. Lucas, Kenneth L. Schwartz, Arnold & Porter, Washington, D.C., for Appellee Committee;
 Roger Frankel, Richard H. Wyron, Swidler & Berlin, Washington, D.C., for Appellees Antonelli.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Appellants Kingdon and Mary T. Gould challenge the bankruptcy court's confirmation of a consensual Reorganization Plan under Chapter 11. The Goulds, who are partners in several real estate ventures with the Debtor (D. F. Antonelli, Jr.), object to a Plan provision that calls for Antonelli to make partnership management decisions at the direction of a Committee comprised of creditors and the Debtor.
 
 
 2
 The Goulds contend that Section 365(c)(1) of the Bankruptcy Code prohibits the assignment of general partner management rights where such assignment is prohibited by state law. Under Maryland and the District of Columbia partnership law "no person can become a member of a partnership without the consent of all the partners." Md. Corps. & Ass'ns Code Ann. Sec. 9-401(7); D.C. Code Ann. Sec. 41-117(7). Accordingly, the Goulds argue, confirmation of the Plan was error. On appeal they seek either a reversal of the confirmation order in its entirety, or a modification of the Plan to delete the provisions that direct Antonelli to make management decisions at the behest of the Committee. The Appellees, D.F. Antonelli, Jr. and his wife, Judith, and the Official Committee of Unsecured Creditors,[1] maintain that the Committee decision-making arrangement outlined in the Plan does not constitute a de facto assignment of Antonelli's partnership management rights. But even if the Plan does assign management rights in contravention of state law, the Appellees argue, such assignment was well within the powers granted to the bankruptcy court by the bankruptcy code.
 
 I.
 
 3
 The Debtor, Antonelli, has been a major real estate developer in the Washington D.C. area since the mid-forties. By 1991, he and his wife and other family members held partnership or direct ownership interests in over 150 real estate projects. After economic downturn in the real estate market, he suffered significant losses, and in January of 1991, bankruptcy proceedings were instituted against him. The Chapter 7 proceedings were converted to Chapter 11, and the matter became the largest Chapter 11 case ever filed in the District of Maryland, involving almost 2,000 creditors, claims of over $200 million and assets of over $100 million.
 
 
 4
 Litigation in numerous contested matters followed. Eventually, the Antonellis and a committee of their creditors engaged in negotiations to attempt to develop a consensual Plan of Reorganization. In March 1992, the Antonellis and the creditors' committee filed a joint recommended Plan (the Third Amended Plan). Creditors holding 93% of the unsecured claims voted in favor of the Plan. Objections to the plan were then filed by various parties, including the Goulds. The Goulds owned interests in partnership with the Antonellis, and objected to a provision that proposed to assign the Debtor's general and limited partnership interests to a liquidating trust which would be controlled by the creditors. The bankruptcy court sustained the Goulds' objections as to the general partner interests, and the Plan proponents then made further amendments and filed a Fourth Amended Plan. The Fourth Amended Plan provided, in Section 11.2(d), that although all economic benefits from Antonelli's general partner interests would be transferred outright to the liquidating trust, Antonelli would nominally remain a general partner in the various partnerships. He would exercise his management rights and duties under the direction of and as a member of a Plan Committee, whose other members would be creditors appointed by the court. The Committee would dispose of the partnership assets over a five year period and distribute the proceeds to the creditors of the estate. Antonelli, although required to cast his vote on partnership matters as directed by the Plan Committee, would be permitted to file a motion with the bankruptcy court seeking a determination as to how he should proceed in the event that he believed that to vote as directed by the Committee would violate his fiduciary obligations or exceed his authority as a general partner. The Committee would indemnify Antonelli for any liability for actions taken at its direction.
 
 
 5
 The Reorganization Plan, as amended, was confirmed by the bankruptcy court on November 13, 1992. The Goulds immediately thereafter filed a Notice of Appeal and a Motion for Stay Pending Appeal, which was granted subject to the posting of a supersedeas bond. The district court reduced the amount of the bond and expedited the briefing schedule. It subsequently, on December 4, 1992, affirmed the bankruptcy court's Confirmation Order, but justified its decision on different grounds than had the bankruptcy court. The district court then continued the stay of the Confirmation Order until December 10, 1992, while the Goulds sought, by emergency motion, to extend the stay pending appeal of the Confirmation Order to this court. The stay was denied on December 10, 1992. The instant appeal followed.[2]
 
 II.
 
 6
 The Goulds' argument is as follows: 1) Section 365(c) of the bankruptcy code prohibits assignment of an executory contract if "applicable law" excuses the non-debtor party to the contract from accepting performance from an entity other than the debtor; 2) under Maryland and District of Columbia partnership law-the relevant "applicable law"-a general partner may not assign his management rights in a partnership without the consent of the other partners; 3) the challenged section of the Reorganization Plan, Sec. 11.2(d), constitutes a de facto assignment of Antonelli's partnership management rights to the Plan Committee. Accordingly, the Goulds argue, the Plan is in violation of the bankruptcy code and should not have been confirmed.
 
 
 7
 Neither the bankruptcy court nor the district court accepted the Goulds' argument, though each court rejected it for different reasons. The bankruptcy court confirmed the amendments in the Fourth Amended Plan on the theory that the challenged provision in the Plan did not violate the partnership laws of Maryland and the District of Columbia. The bankruptcy court considered the particular Plan arrangement-whereby Antonelli would consult with the Plan Committee, act at its direction, and retain the right to challenge its directives if he felt that to so act at the Plan Committee's direction would cause him to breach his fiduciary duties as general partner-to be fully consistent with state partnership law because Antonelli retained sufficient control over his management powers. The bankruptcy court therefore had no occasion to construe the provisions of the bankruptcy code here at issue, 11 U.S.C. Secs. 365(c), 365(f), and 1123(a)(5)(B).
 
 
 8
 The district court, on the other hand, accepted-at least for purposes of discussion-the contention of the Goulds that the transfer of power to the Committee as envisioned in Sec. 11.2(d) of the Plan constituted a transfer of management power that violated the state partnership laws. The district court then went on to construe the provisions of the bankruptcy code. It decided thatSec. 365(c)-which prohibits assignment of an executory contract where" applicable law" excuses a non-debtor party from accepting performance from an assignee-did apply in the context of the confirmation of Reorganization Plans. It decided that Sec. 1123(a)(5)(B)-a provision that grants broad authority to the court to confirm transfers of property "notwithstanding any otherwise applicable nonbankruptcy law"-did not override Sec. 365(c). Nevertheless, the court concluded that Sec. 365(c) was not a bar to the confirmation of the Plan.
 
 
 9
 The district court's analysis rested in part on a reconciliation of Secs. 365(c) and 365(f)-two bankruptcy code sections that appear on their faces to be contradictory.[3] Section 365(f) authorizes a trustee to assign an executory contract, notwithstanding any contrary "applicable law," if adequate assurance of future performance is given. The section, however, is prefaced by the statement that it applies "except as provided in subsection (c) of ." That section, in turn, prohibits an assumption of assignment of an executory contract if applicable law excuses a non-debtor party to the contract from accepting performance from an assignee. Thus what Sec. 365(f) gives, Sec. 365(c) appears to take away.
 
 
 10
 Various courts have addressed that apparent contradiction, and several alternative reconciliations have surfaced. Some courts have decided that Sec. 365(c) applies only to certain kinds of executory contracts, that is, contracts based upon "personal service or skills, or upon personal trust or confidence." In Re Taylor Mfg, 6 B.R. 370, 372 (Bankr. N.D. Ga. 1980) (quoting 2 Collier on Bankruptcy, p 365.05); In re Fastrax, Inc., 129 B.R. 274, 278 (Bankr. N.D. Fla. 1991) (a contract is non-assignable under Sec. 365(c) where personality is an essential consideration). Other courts, on the other hand, have not drawn such a distinction but have applied Sec. 365(c) to real estate partnership agreements such as the instant one and decline to permit assignment of the partnership rights where assignment of partnership management rights were prohibited by state law. See In re Braniff Airways, Inc., 700 F.2d 935 (5th Cir. 1983) (plain language of Sec. 365(c) is not limited to personal service contracts and should be read expansively); In re Priestly, 93 B.R. 253, 260 (Bankr. D. N.M. 1988).
 
 
 11
 The district court in the instant case adopted the reasoning in the decision of the Sixth Circuit in In Re Magness, 972 F.2d 689 (6th Cir. 1992). In In Re Magness, the court found that Sec. 365(f) contains a broad rule while Sec. 365(c) contains a carefully crafted exception to the broad rule. Under Sec. 365(f), a contractual or statutory prohibition against assignment of executory contracts is ineffective against the trustee, who may assign a contract in contravention of such law. Under Sec. 365(c), however, there is one instance in which the trustee's power to override applicable law is diminished, and that is where the attempted assignment by the trustee will have an impact upon the rights of a non-debtor third party. Any law which protects the rights of such a non-debtor third party by allowing him or her to refuse to accept from or render performance to an assignee, will also prohibit assignment by the trustee.
 
 
 12
 The district court decided that "[t]he provision of the Uniform Partnership Act upon which the Goulds rely in this case clearly constitutes, within the context of the [In re Magness ] distinction which I am drawing, a rule prohibiting assignment within the meaning of Section 365(f), rather than a rule excusing performance within the meaning of section 365(c)."[4] Recognizing that the distinction between the two rules might be "somewhat facile," the court went on to say that even the foregoing analysis did "not mean that, the Partnership Act aside, the assignment of Mr. Antonelli's management power is not barred by Section 365(c)." That question, the court said, "requires a further inquiry into whether or not the assignment would violate the principle suggested by Sec. 365(c)(1) itself: that the non-debtor party to a contract is excused from [accepting] performance [from an assignee] if the identity of the debtor is a material condition of the contract when considered in the context of the obligations which remain to be performed under the contract."
 
 
 13
 By adopting this "materiality of identity" test, which in some respects merely refines the distinction between so-called personal services contracts and executory commercial contracts, the district court concluded that the "personal services contract" label was not precise enough, given the conflicting policy imperatives embodied in Sec. 365. The court instead advocated a "particularized, practical approach" wherein any given contract sought to be assigned under the section is examined in the context of the duties still remaining on the contract. A contract that in its inception contained elements that made it very personal-i.e., that made the identity of the contractor material, as is the case in some partnership agreements-might well lose that personal character during the life of the agreement. Thus it was crucial to the district court's determination that the general partner management duties left to be performed by Antonelli did not depend in any great measure upon Antonelli himself. The real estate partnerships at issue involved "matured" projects-completed office buildings-which were being managed by a property management firm and which constituted joint investment endeavors rather than ongoing partnerships that required active business decision-making. Some need for financial or business decision-making might remain or surface. But the pertinent question under the test is not whether material involvement by general partners remains over the life of the contract, but instead focuses upon the materiality of the identity of the partner to the obligations remaining. The court found it self-evident that the involvement in decisions remaining in the real estate investment partnerships at issue here did not require talents or knowledge possessed only by Antonelli. Although Antonelli's advice on the projects was still valuable, the court saw nothing in the Plan that deprived the projects of his advice. The only expectation the Goulds, as partners of Antonelli, could reasonably entertain from Antonelli as a management partner is that he would bring his expertise on real estate development and management to the affairs of the partnership. Such expertise was not lost to the partnerships or to the Goulds under the provisions of the Reorganization Plan.
 
 III.
 
 14
 The Goulds have argued vigorously that the reasoning used by the district court was an explicit departure from statutory mandate and case law precedent, and was a bald and improper resort to broad policy and equitable considerations. The Goulds' arguments on this particular score are, however, spurious. The precedent, as the district court pointed out, is unclear, inconsistent and undeveloped. The court had no choice but to use the traditional tools of judicial decisionmaking in filling in the interstices of the code and in reconciling contradictory provisions.
 
 
 15
 The Goulds have also argued that the district court exceeded its authority in finding facts-specifically the finding that all of the partnerships at issue involved "matured" projects. However, the district court's "finding" in that matter was merely another way of stating what the bankruptcy court had already found. The bankruptcy court found that the partnership relationships sought to be maintained did not genuinely implicate personal relationships relying upon the unique and individual taste, discretion, or trust of Antonelli. The district court simply used the bankruptcy court's findings to express a legal conclusion: that given the status, function, and objectives of the partnerships at issue, the arrangement contemplated by the Plan whereby Antonelli could consult with the Committee and then be directed by them did not violate the bankruptcy code or the state law mandate that general partnership management rights may not be transferred. The legal standard the court expressed did not depart substantially from the personal service versus commercial venture distinction drawn by other courts. See In re Sunrise Restaurants. Inc., 135 B.R. 149, 152-53 (Bankr. M.D. Fla 1991) (contract that involved strict business transactions to furnish economic gains does not require special knowledge and therefore may be assigned under Sec. 365(c)). It simply called for a more particularized consideration of the nature and status of the contract in question.
 
 
 16
 The Goulds also have contended that the district court's interpretation of Sec. 365(c) raises constitutional issues. Their argument is that the property rights at issue (the rights of the non-debtor partners to associate themselves in partnership with whomever they want and to exclude unwanted persons from the partnership) predate the bankruptcy code, and that thus the Fifth Amendment prevents the court's interpretation of Sec. 365(c) because such interpretation would impair their vested rights. A Plan which constitutes a de facto transfer of management control without partner approval, they argue, constitutes a "taking" of the partner's right to withhold consent to the admission of new partners.
 
 
 17
 The constitutional argument fails. The Goulds have not been deprived of any cognizable property right since they still retain fully their interests in the partnership property, in the partnership itself, and in the right to participate in management. They have never had and did not lose a property interest in Antonelli's management rights. Even if the Plan could be construed as affecting the Goulds' property rights, it cannot be construed as effecting a taking. No physical invasion has taken place, and the Goulds have not been deprived of all economic benefit of the partnership. See Keystone Bituminous Coal Ass'n v. DeBendictis, 480 U.S. 470, 496 (1987) ("where an owner possesses a full 'bundle' of property rights, the destruction of one strand is not a taking") (quoting Andrus v. Allard, 444 U.S. 51 (1979)).
 
 IV.
 
 18
 In short, the Appellants have failed to convince that confirmation of the Plan was error or that Sec. 11.29(d) of the Plan need be modified in order to conform to the strictures of the bankruptcy code and state partnership law. Because we affirm the result reached by both the district court and the bankruptcy court, we need not make a selection between the different approaches of the two courts. The bankruptcy court held that the Plan did not violate state partnership law; the district court held that the bankruptcy code allows transfers of general partnership interests otherwise violative of state partnership law when the identity of the general partner is not material to the nature of the partnership duties remaining. However, the two courts agree on the most essential point. Under the bankruptcy code, a bankruptcy court has the power to confirm a consensual Reorganization Plan that provides for the Debtor to serve on a management committee comprised of its creditors and act at the committee's behest in making management decisions concerning his partnerships, especially where the Debtor retains the right to refuse to take actions he considers to be contrary to his fiduciary duties until so ordered by the court.
 
 
 19
 At the same time, attention should be paid to the objectives of the two statutes involved: (1) the Uniform Partnership provision disallowing transfer of a debtor's partnership interest to a third party is infringed to a minuscule degree, if infringed at all; and (2) the bankruptcy statute might substantially lessen the likelihood of prompt liquidation of the assets of the debtor in bankruptcy if Sec. 365(c) made impossible the transfer provisions of the Fourth Amended Plan. Liquidity is a paramount bankruptcy objective. The most satisfactory reconciliation of the two statutes will thus be found in the Fourth Amended Plan if it is permitted to operate.
 
 
 20
 The Plan provision "assigning" Antonelli's partnership management rights to the Committee, assuming that that is the effect of the provision, is justified by the fact that Antonelli retains the right to advise, consult, and bring to bear his considerable experience in making partnership decisions. The Plan's requirement that Antonelli accept direction from the Committee does not introduce impermissible external factors into the exercise of his discretion as a general partner any more than do the personal and economic circumstances of any individual who is a general partner. The Goulds, as partners, have no legal entitlement to keep Antonelli from agreeing to consult with and accept direction from the Plan Committee. Their only entitlement is that he not breach his fiduciary obligations; that entitlement is protected under the Plan.
 
 
 21
 Moreover, the practical effect of the Plan is to elevate, not minimize the input of Antonelli into the management of the Gould/Antonelli partnerships. When bankruptcy proceedings commenced, Antonelli's general partnership interests became the property of the Debtor's bankruptcy estate. See 11 U.S.C. Sec. 541(a). Both the economic interest in the partnerships and the right to participation in the management of the partnerships' affairs vested in the estate. In re Cardinal Indus., Inc., 105 B.R. 834, 848 (Bankr. S.D. Ohio 1989); In re Plunkett, 23 B.R. 392, 393-94 (Bankr. E.D. Wis. 1982). Although pursuant to the bankruptcy court's Administrative Order No. 3, Antonelli was permitted to continue functioning as a general partner in some of his partnerships while in bankruptcy, he lost the right to unfettered discretion, and had to obtain bankruptcy court approval for any act outside the ordinary course of business, with notice to creditors. Thus, if general partner management interests were not assignable by the bankruptcy court, at the very least under the liberal terms of the instant Plan, the court would have to control the Debtor's exercise of his general partnership rights indefinitely rather than passing off control to creditors pursuant to a consensual Plan of Reorganization. To hold anything other than that the bankruptcy court was within its discretion to approve this Reorganization Plan would result only in a prolongation of a bankruptcy and would frustrate the very purpose of Reorganization Plans.
 
 
 22
 Accordingly, the order of the district court affirming the confirmation of the Plan by the bankruptcy court is
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 During the pendency of this appeal, the Appellees filed a Motion to Substitute Parties, contending that the Antonelli Creditors' Liquidating Trust Plan Committee was the relevant party-in-interest since the Committee of Unsecured Creditors had terminated upon entry of the bankruptcy court's Confirmation Order. The panel deferred action on the motion until argument on the merits, on the reasoning that should the Confirmation Order be reversed, the Unsecured Creditors Committee would have new life. Because we affirm the Confirmation Order, action on the Motion to Substitute Parties is unnecessary
 
 
 [2]
 Pending appeal, the Goulds sold their entire interest in Parkway Associates Limited Partnership, and Antonelli converted his general partnership interest in 1331 G Street Associates Limited Partnership to a limited partnership. Accordingly, we grant the motion of the appellees to supplement the record with documents reflecting these transactions. With respect to these two partnerships, the appeal is moot. In all other respects, we deny the motion to dismiss the appeal as moot
 
 
 [3]
 The provisions read, in pertinent part, as follows:
 Sec. 365(c): The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties if-(1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment; ...
 Sec. 365(f)(1): Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.... (2) The trustee may assign an executory contract or unexpired lease of the debtor only if-(a) the trustee assumes such contract or lease in accordance with the provisions of this section; and (b) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.
 
 
 [4]
 Under the Uniform Partnership Act (UPA) "no person can become a member of a partnership without the consent of all the partners." Md. Corps. & Ass'ns Code Ann. Sec. 9-401(7); D.C. Code Ann. Sec. 41-117(7). Assignment of a partner's economic rights is permitted but the assignee acquires no right to participate in management unless he is admitted as a partner