**In re GROVE RICH REALTY CORP., Debtor.**

Bankruptcy No. 896–80964–478.

United States Bankruptcy Court, E.D. New York.

Sept. 25, 1996.

Edwin I. Gorski, New York City, for debtor.

Brian R. DeLaurentis, New York City, for William A. Friedle, Creditor.

Weinberg, Kaley, Gross & Pergament, L.L.P. by Jeffrey M. Zalkin, Garden City, NY, for vendor.

### DECISION DENYING DEBTOR'S MOTION TO ASSUME OR ASSIGN CONTRACT OF SALE

DOROTHY EISENBERG, Bankruptcy Judge.

This matter is before the Court pursuant to a motion under Section 365 of the Bankruptcy Code (the "Section 365 Motion") by Grove Rich Realty Corp. (the "Debtor") and William A. Friedle ("Friedle"), President and a stockholder of the Debtor (collectively the "Movants"), to assume and assign the Debtor's rights and delegate its duties under a Contract of Sale, dated June 25, 1992, between Cherry Grove Realty Associates ("CGRA"), as vendor, and the Debtor, as vendee, with respect to certain real property located at Cherry Grove, on Fire Island, New York (the "Contract of Sale") to Fire Island Beach Properties, Inc. ("FI Properties"). This Contract of Sale provides for the Debtor's execution at closing of a Purchase Money Note and Purchase Money Mortgage in favor of the vendor. CGRA and Grove Realty Enterprises, Inc. ("GRE"), the vendor's as-

signee, (collectively the "Vendor") opposed the motion upon three grounds: (1) the Debtor cannot assume, or assume and assign, the Contract of Sale due to its Purchase Money Note and Purchase Money Mortgage features because of the prohibitions contained in 11 U.S.C. Sections 365(c)(I) and/or (c)(2); (2) the proposed assumption and assignment constitutes a disposition of substantially all the assets of the estate before any disclosure statement and/or plan have been filed, in derogation of the doctrine of *In re Lionel Corp.,* 722 F.2d 1063 (2d Cir.1983), and the Movants fail to allege material facts to meet the criteria for any exception therefrom; and (3) the Movants fail to demonstrate adequate facts to make the required showing under Section 365(f)(2)(B) of "adequate assurance of future performance by the assignee". After considering the motion papers filed by the Debtor and Friedle, the Vendor's objections thereto, the Debtor's Memorandum of Law in Support of the motion, the Vendor's Memorandum of Law in Opposition thereto, and the Debtor's Reply Memorandum of Law, and after hearing extensive oral argument by counsel to the parties at a hearing held on June 27, 1996, the Court found that, as a condition precedent to an ultimate determination of the motion, an issue of law exists as to whether Sections 365(c)(1) and/or (c)(2) precludes such assumption, or assumption and assignment, of the Contract of Sale, and reserved decision on such issue of law. The Court also found certain deficiencies in the motion papers in response to the Vendor's other arguments and, thus, denied the motion without prejudice to revision and refiling by the Debtor. The Debtor has subsequently advised the Court that the Debtor cannot assume the contract, but seeks to assign it to another entity.

## FACTS

1. Upon the involuntary petition of Friedle filed on February 20, 1996, this Court granted an Order of Relief against the Debtor under Chapter 11 of Title 11 of the United States Code on March 22, 1996.

2. Movant Friedle is the President and majority shareholder of the Debtor, with a 55% ownership interest in the Debtor (Stmt. of Financial Affairs; para. 19).

3. Michael Horak is the only other shareholder of the Debtor, with a 45% ownership interest in the Debtor (Stmt. of Financial Affairs, para. 19). He is not a participant in this case.

4. On August 31, 1995, prior to the filing of the involuntary Chapter 11 case, a proceeding was brought by Friedle in the Supreme Court of the State of New York, Suffolk County, Index No. 95–19918, for the judicial dissolution of Grove Rich Realty Corp. and Ocean Crest Enterprises Corp., which dissolution proceeding was discontinued by stipulation (Invol. Pet. and Stmt. of Facts; Stmt. of Financial Affairs, para. 4; Sec. 365 Motion, Ex. B).

5. Ocean Crest Enterprises Corp. is a corporation controlled by the principals of the Debtor, incorporated for the purpose of operating a restaurant facility on Fire Island, New York (Sec. 365 Motion, Ex. B).

6. The Chapter 11 estate has only one significant asset, the Debtor's contractual interest in the real property to be conveyed pursuant to a Contract of Sale, dated June 25, 1992, between Cherry Grove Realty Associates, as vendor, and the Debtor, as vendee, with respect to certain real property located at Cherry Grove, Fire Island, New York. (See Sch. A–Real Property; Sch. G–Executory Contracts and Unexpired Leases.)

7. The Contract of Sale is an executory contract.

8. At the time the parties entered into the Contract of Sale, Grove Rich Realty Associates was wholly-owned by Richard Horak, the father of Michael Horak.

9. The Contract of Sale provides for a purchase price of $350,000, with a Purchase Money Note and Mortgage in the amount of $250,000 to be given by the vendee to the vendor as part of the purchase price (Contr., para. 1a).

10. The terms of the Purchase Money Note and Mortgage provide for repayment of the principal amount of $250,000, with interest at the rate of 8–½% per annum, in monthly installments of principal and interest of

$3,099.64 for a period of 60 months, and a balloon payment of the unpaid principal balance and accrued interest at the end of 60 months (Contr., unnumbered last para. of Rider).

11. The Contract of Sale provides for a limited right of assignment to a corporation of which Grove Rich Realty Corp. is a majority stockholder, officer and director (Contr., Rider 26).

12. An Addendum to the Contract of Sale, executed in January 1995, provides that the Debtor may assign its rights under the Contract of Sale to Michael Horak, or a corporation of which he (Michael Horak) is at least a 50% shareholder (Add. to Contr., para 3; Movants' Memo. of Law, p. 3).

13. The Debtor proposes to assign its rights and duties under the Contract of Sale, for $15,000, to FI Properties, a New York corporation formed on May 9, 1996 for the purpose of acquiring the subject real property.

14. Friedle is the majority shareholder of FI Properties (Movants' Memo. of Law, p. 1).

15. The premises which are the subject of the Contract of Sale consist of a restaurant and a retail store which traditionally are rented during the May to October seasonal period (Sec. 365 Motion, Ex. C).

16. In January 1995, CGRA and Ocean Crest Enterprises, Inc. entered into a seasonal lease for the rental of a substantial portion of the subject premises, to be used as a restaurant during the period May through September 1995 (Adden. to Contr., first unnumbered para.).

17. By Order of this Court dated May 23, 1996, Fire Island Phoenix, Inc. has obtained a lease on the restaurant portion of the premises for the period May through September 1996, with the stated intention of operating a restaurant facility on the site.

18. Friedle is the majority shareholder of Fire Island Phoenix, Inc. (Memo. of Law in Support of Cross–Motion to Lease Property to Fire Island Phoenix, Inc., p. 3).

19. As of the date of the instant motion, Fire Island Phoenix, Inc. has not operated the restaurant facility and, therefore, has no proven ability to generate cash flow (Vendor's Memo. Law, p. 10).

20. FI Properties, the proposed assignee, intends to pay the debt service on the Purchase Money Note and Mortgage from the rental income generated by the subject premises; more specifically, rent received from (a) Fire Island Phoenix, Inc., the lessee of the restaurant portion of the premises, and (b) the lessee of the retail shop, which is currently vacant and unrented (Sec. 365 Motion, para. 7).

21. No financial statements showing past cash flow, projected cash flow, or capitalization have been provided to the Court or the Vendor with respect to either FI Properties or Fire Island Phoenix, Inc. (Vendor's Memo. of Law, p. 2).

### ISSUES

The primary issues before this Court are:

1. Whether the Debtor may assign the Contract; and

2. If so, whether it may assign it to a newly formed corporate entity with no known assets as of the time of the assumption.

### DISCUSSION

Section 365(a) of the Bankruptcy Code allows a trustee or debtor-in-possession to either assume or reject any executory contract, whichever is in the best interests of the estate. In addition, Section 365(f)(1) of the Bankruptcy Code limits the rights of the non-debtor party to the executory contract by preventing such party from (i) enforcing contract provisions prohibiting, restricting or conditioning assignment of the contract; or (ii) invoking non-bankruptcy law to prohibit, restrict or condition such assignment. *See, e.g., NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). In *Bildisco*, the Supreme Court noted that the debtor in this case is the same entity which existed before the bankruptcy filing, and is empowered by virtue of Section 365 of the Bankruptcy Code to deal with its contracts in a manner it could not have done absent the bankruptcy filing, 465 U.S. at 528, 104 S.Ct. at 1197. However, Congress carved out an important exception to the

broad powers given to a trustee or debtor-in-possession with respect to assuming and/or assigning executory contracts. The two sections of the Bankruptcy Code which are applicable are Sections 365(f)(1) and 365(c) of the Bankruptcy Code.

Section 365(f)(1) states:

**Except as provided in subsection (c) of this section,** notwithstanding a provision in an executory contract or lease of the debtor or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease. . . .

11 U.S.C. Sec. 365(f)(1) (emphasis added). As indicated, the exception to the broad powers given to a trustee or debtor-in-possession regarding assumption and/or assignment of executory contracts is set forth in Section 365(c) of the Bankruptcy Code, which reads, in pertinent part, as follows:

The trustee may not *assume or assign* any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if

(1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession whether or not such contract, or lease, prohibits or restricts assignment of rights or delegation of duties; and

(B) such party does not consent to such assumption or assignment . . .

11 U.S.C. Sec. 365(c)(1) (emphasis added).

These two Code provisions, on their face, appear to be contradictory because Section 365(f)(1) prohibits the non-debtor party from invoking "applicable law", to keep the debtor-in-possession from "assigning" the executory contract, while Section 365(c)(1) permits the non-debtor party to invoke "applicable law" to prevent the debtor-in-possession from "assuming or assigning" the executory contract. *See,* Brett W. King, *Assuming and Assign-*

*ing Contracts: A History of King, Assuming and Assigning Executory Contracts: A His Indeterminate 'Applicable Law',* 70 Am. Bankr.L.J. 95 (Spring, 1996). *See also In re Catron,* 158 B.R. 629, 636 (E.D.Va.1993), *aff'd,* 25 F.3d 1038 (Table, Text in WESTLAW), Unpub'd Disposition, 1994 WL 258400 (4th Cir.1994) (the District Court pronounced the two subsections to be irreconcilable)[1]; *In re Antonelli,* 148 B.R. 443 (D.Md.1992), affld, 4 F.3d 984 (Table, Text in WESTLAW), Unpub'd Disposition, 1993 WL 321584 (4th Cir. 1993); *In re Magness,* 972 F.2d 689 (6th Cir.1992). But see *In re Pioneer Ford Sales, Inc.,* 729 F.2d 27, 29 (1st Cir.1984) (court finds no inconsistency in the statutory language, concluding that Section 365(f)(1) applies "only when the contract is not silent about assignment").

■ This Court finds that, as used in Section 365(f), "applicable law" means all laws which restrict contract assignment, in general; whereas, as used in Section 365(c)(1)(A), "applicable law" means all laws which are concerned with both the assignment of rights and delegation of duties. The Section 365(c)(1) exception to the general rule of the assignability of contracts was intended by Congress to be applied narrowly and to such circumstances as contracts for the performance of nondelegable duties. *In re Taylor Mfg., Inc.,* 6 B.R. 370, 372 (Bankr. N.D.Ga.1980). Courts originally held that "applicable law" for purposes of Section 365(c)(1)(A) referred only to laws which historically prohibited the assignment of personal service contracts. However, it is now well established that Section 365(c)(1) does not apply solely to personal service contracts. *See, e.g., Pension Benefit Guaranty Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.),* 700 F.2d 935, 943 (5th Cir.) *reh'g denied,* 705 F.2d 450 (5th Cir.1983); *In re Pioneer Ford Sales, Inc.,* 729 F.2d 27, 28 (1st Cir.1984).

■ In general, the Bankruptcy Code favors the rehabilitation of a debtor's estate, and specifically promotes the transfer of valuable assets from the debtor to the debt-

---

**1.** Unlike the District Court, the Fourth Circuit expressed no opinion whether subsections 365(c) and 365(f) are irreconcilable, stating that subsec-

tion 365(c) governed the dispute and noting that subsection 365(f) is expressly subject to subsection 365(c).

or-in-possession. Because an executory contract is potentially the most valuable asset of the estate, undue restrictions on assumption would be contrary to the fundamental goals of the Code. Section 365(c)(1)(A) was enacted to be an exception to the general rule of assignability. Its goal is to protect non-debtor third parties whose rights may be prejudiced by having a contract performed by an entity other than the one with which it originally contracted, but the exception is limited to cases where non-bankruptcy law so states. Thus, if there is a material change in the identity of the person or entity rendering performance under the contract, the identity of that person or entity is an essential element of the contract, and if the contract is non-assignable under applicable non-bankruptcy law then the estate cannot assign the contract. *See, In re Cardinal Industries, Inc.*, 116 B.R. 964, 982 (Bankr.S.D.Ohio 1990).

■ This allows for enforcement of federal, state and local laws which prohibit assignment in bankruptcy where non-debtor third parties would be adversely affected. This is particularly true when the proposed assignee has no track record of performance, and there is no assurance of full compliance with the contract, or of an ability to compensate the non-debtor party to the contract for any default by the proposed assignee.

### APPLICABLE LAW

■ The issue before the Court is whether there exists any "applicable law" that excuses the Vendor from accepting performance by FI Properties. The term "applicable law" as used in Section 365(c)(1) of the Bankruptcy Code is not limited to the rule against assignment of personal service contracts and federal government procurement contracts and applies generally to unexpired leases and executory contracts of the debtor. *In re Braniff Airways, Inc.*, 700 F.2d 935, 943 (5th Cir.1983), *In re Hartec Enterprises, Inc.*, 117 B.R. 865 (Bankr.W.D.Texas 1990).

■ New York law excuses a contract vendor under a contract of sale of real property from accepting a purchase money note and purchase money mortgage from an enti-

ty other than the contract vendee. *Lojo Realty Co., Inc. v. Estate of Isaac G. Johnson*, 227 A.D. 292, 237 N.Y.S. 460 (App.Div. 1st Dep't 1929), *aff'd* 253 N.Y. 579, 171 N.E. 791 (1930). In *Lojo*, the Appellate Division found that the assignability of the contract did not carry with it the right to change the terms so as to permit a different maker of the bond and mortgage than provided for by the parties. The Court stated:

> The vendor in a real estate contract has a right to rely upon the character of the maker of the bond and mortgage, as well as upon his financial responsibility. To hold otherwise would render it possible for a vendor to have foisted upon him a vendee whose financial responsibility in the case of a deficiency judgment upon foreclosure he would not have accepted.

> \* \* \* \* \* \*

> The power of an assignee, with certain exceptions, to enforce the benefits under a contract, has always been the law; but it has never been the law that the remedy of specific performance to enforce such rights comprises within it also the right to compel the vendor to change the terms of the contract so as to permit the original vendee to shed the burdens.... In the familiar phrase of Lord Denman, 'You have the right to the benefit you anticipate from the character, credit, and substance of the party with whom you contract.'

*Id.*, 237 N.Y.S. at 461–62. *See also Saltair Shinnecock, Inc. v. Yarroll*, 56 A.D.2d 625, 391 N.Y.S.2d 683 (App.Div.2d Dep't 1977). In *Saltair Shinnecock*, the vendee under a real property contract, which contained a provision for the vendee to give back a purchase money note and mortgage in favor of the vendors, was permitted to assign the contract right only on condition that the original vendee stood ready to execute a mortgage bond if the vendors so required. Here, the Debtor is not providing any mortgage bond to the vendor, and if permitted to assign its contract, would be released of any future liability. This would leave the vendor with no recourse as to the Debtor in the event of the assignee's default.

The Movants argue that New York law does not preclude the assignment of the Contract of Sale with the Purchase Money Note and Mortgage provisions, and that *Lojo Realty, supra,* is inapplicable and ancient. However, the Movants admit that, *"Lojo* holds a continuing truth of contract law, that one may assign one's rights under a contract, but may not delegate the duties of a contract without the consent of the party receiving performance." (Movants' Reply Memo. of Law, p. 3.) Here, Movants seek an assignment which would have the effect of delegating to FI Properties, post-closing, the contractual duties of making 60 monthly payments of $3,099.64 each, and a lump-sum payment of the unpaid principal balance and accrued interest upon the expiration of 60 months. Furthermore, the rule of *Lojo Realty* is firmly established and as applicable today as it was when it was decided in 1929. In the 1994 edition of *Real Estate Titles,* in the chapter entitled "Contracts of Sale," the New York State Bar Association specifically cites *Lojo Realty* for the proposition that a requirement for some personal performance by a contract vendee, "such as the execution and delivery of a purchase money bond or note by the vendee," hinders assignability of the contract by the vendee. James M. Pedowitz, NYS Bar Ass'n, *Real Estate Titles, 2d Ed.,* at 11–8 (1994). Consequently, New York law clearly prohibits assignment of the Purchase Money Note and Mortgage which forms a part of the Contract of Sale, especially since such assignment is vehemently contested by the Vendor.

 The Movants further argue that New York law does not excuse the Vendor from specific performance of its obligations under the Contract of Sale (Memo. of Law in Support, p. 6), and cites *Rockland Freeholders, Ltd. v. O'Loughlin,* 219 N.Y.S.2d 698 (Sup.Ct.Rock.Co.1961) for this proposition. In *Rockland Freeholders,* an assignee of the purchaser under a contract of sale of real property brought an action against the seller for specific performance of the contract. The Court noted that the contract was made on a form published by the New York Board of Title Underwriters which is commonly sold by law stationers. The form contract provided, among other things, that "Purchas-er or Assigns" execute, acknowledge and deliver "to the seller a bond or note satisfactory to the seller secured by a purchase money mortgage on the ... premises." *Id.* at 700. At closing, the seller refused to convey title on the ground that the contract vendee had no right to assign his obligation to a dummy, or any person or corporation with whom the seller was not satisfied. The Court decided in favor of the assignee, holding that "the effect of the inclusion of the words 'or assigns' in the above quoted provision is to recognize not only the right in the contract vendee to assign the agreement, but to provide for the acceptance by the seller of the assignee's bond or note and mortgage." *Id.* at 700. In so deciding, the Court looked for guidance to a monograph by Alexander Bicks, in which he commented as follows on the effect of a provision in a contract of sale requiring the purchaser to give a note or bond and mortgage:

> In considering from the purchaser's position this provision dealing with the purchase money mortgage it should be noted at the outset that the bond which the mortgage secures is required to be that of the purchaser. *If the contract is assigned, the purchaser will still be required to be liable for the payment of the debt and to execute a collateral bond.* To avoid this result, as purchaser's attorney you might ask that the words 'or his assigns,' be inserted after the word 'purchaser', in the first line of said provision.

*Rockland Freeholders,* at 700 (emphasis added), quoting with approval Alexander Bicks, Contracts for the Sale of Realty at 46 (Practicing Law Institute 1954). The Court in *Rockland Freeholders* then goes on to extrapolate from Judge Bicks' comment that, conversely, if the vendor desired the right to insist upon the personal obligation of the contract vendee, the form contract "should have been amended to delete the words 'or assigns'." *Id.* However, no cases are cited to support the Court's position, and this Court has been unable to find any cases that follow this reasoning. This Court finds the reasoning in *Rockland Freeholders* to be somewhat facile and holds that the rule in New York is that where a contract for the

sale of real property provides for execution of a note and purchase money mortgage by the purchaser, the instruments are required to be given by the original purchaser and not an assignee. *Lojo Realty Co., Inc. v. Estate of Isaac G. Johnson*, 227 A.D. 292, 237 N.Y.S. 460 (App.Div. 1st Dep't 1929) *aff'd* 253 N.Y. 579, 171 N.E. 791 (1930); *Saltair Shinnecock, Inc. v. Yarroll*, 56 A.D.2d 625, 391 N.Y.S.2d 683 (2d Dep't 1977); *Tarolli v. Syracuse Inv. Corp.*, 151 Misc. 634, 271 N.Y.S. 871 (Sup.Ct., Onondaga Co.), *aff'd*, 241 A.D. 912, 271 N.Y.S. 879 (App.Div. 4th Dep't 1934); *Amalfitano v. Castronovo*, 199 N.Y.S.2d 187 (Sup.Ct. Kings Co.1960); James M. Pedowitz, NYS Bar Ass'n, Real Estate Titles, 2d Ed. 11–8 (1994). In this case, the original purchaser, the Debtor, is seeking only to "flip"[2] the contract, and is not willing or able to remain liable for the ongoing purchase money debt.

■ Furthermore, the facts in the instant case are distinguishable from the facts in *Rockland Freeholders*. Although paragraph 1(a) of the Contract of Sale in the instant case provides for a "Purchase Money Note and Mortgage from PURCHASER (or assigns) to SELLER," the Contract of Sale, viewed in its entirety, provides for only a limited right of assignment. *National Equipment Rental, Ltd. v. Reagin*, 338 F.2d 759, 762 (2d Cir.1964) ("New York courts have consistently espoused the principle that the entire contract must be considered and, as between possible interpretations of an ambiguous term, that will be chosen which best accords with the sense of the remainder of the contract."); *Ruttenberg v. Davidge Data Systems Corp.*, 215 A.D.2d 191, 626 N.Y.S.2d 174, 177 (App.Div. 1st Dep't 1995) ("It is a recognized rule of construction that a court should not adopt an interpretation which will operate to leave a provision of a contract without force and effect."). Paragraph 1(a) is boilerplate language contained on a standard form commonly sold by law stationers. On the other hand, other contract provisions concerning the Purchase Money Note and Mortgage were specially prepared for the

Contract of Sale as between these contracting parties. If there is conflict between the boilerplate terms and the language inserted by the parties, the specially inserted language is to be preferred to the printed language. *Lee v. Ravanis*, 349 Mass. 742, 747, 212 N.E.2d 480, 483 (1965). *See also*, 22 N.Y.Jur.2d, Contracts § 225 71–72 (Lawyer's Coop.1982).

Rider 26 to the Contract of Sale provides as follows:

> 26. NO ASSIGNMENT. Purchaser shall not assign this contract without the prior written consent of seller, except that purchaser may assign this contract to a corporation of which purchaser is a majority stockholder, officer and director.

(Contr. Para. 26). The plain language of the rider prohibits assignment of the Contract of Sale without prior written consent of the Vendor, except to a corporation of which the Debtor is a majority stockholder, officer and director. Moreover, there is no factual dispute between the parties about the Debtor existing for the sole purpose of entering into the Contract of Sale and consummating the transaction contemplated thereunder. Thus, when the parties entered into an addendum to the Contract of Sale in January 1995, they clarified and further limited the right of assignment, as follows:

> 3. Purchaser shall have the right, at any time, to assign this contract to Michael Horak, or a corporation of which he is at least a 50% shareholder.

(Adden. Para. 3). Consequently, upon execution of the addendum, the Debtor had the limited right, without obtaining prior written consent from the Vendor, to assign the Contract of Sale only to Michael Horak or a corporation of which he is at least a 50% shareholder.[3] Michael Horak is a minority stockholder of the Debtor. Furthermore, Michael Horak was an owner and operator of a restaurant doing business as Ocean Crest Enterprises Corp. ("Ocean Crest"), which

---

**2.** "Flip" is a colloqual term used in real estate transactions.

**3.** The Movants admit that "assignment is permitted under the contract to any entity controlled by Grove Rich or Michael Horak." (Movants' Memo of Law, p. 9).

was the former occupant of a substantial portion of the premises that is the subject of the Contract of Sale, pursuant to a lease agreement between CGRA and Ocean Crest. It is significant that the Vendor has a prior history of business dealings with Michael Horak, and his father, Richard Horak, formerly the sole shareholder of the Debtor. Richard Horak is the individual who, acting on the Debtor's behalf, executed the Contract of Sale in June 1992 and the Addendum in January 1995.

While the Vendor has had a four year relationship with the Horaks, he has had no prior dealings with Friedle, FI Properties or FI Phoenix. In fact, Movants freely admit that FI Properties and FI Phoenix are controlled by Friedle and were only recently incorporated in May 1996. The Movants have stated that FI Properties intends to pay the debt service on the Purchase Money Note and Mortgage from the rental income generated by the real property. At present, FI Phoenix, a restaurant facility, is the lessee of two-thirds of the premises and the retail store is vacant. It is uncontroverted that, as of the date of the instant motion, FI Phoenix had not commenced operations. Thus, the Vendor has no way in which to gauge FI Phoenix's ability to develop and/or operate the restaurant facility. In view of the foregoing, the Vendor cannot ascertain whether the proposed assignee has the financial capacity to meet the obligations imposed by the Purchase Money Note and Mortgage which forms a part of the Contract of Sale.

This is exactly the situation envisaged by the Court in *Lojo Realty, supra,* when it quoted Lord Denman: "You have the right to the benefit you anticipate from the character, credit and substance of the party with whom you contract." *Lojo Realty,* 237 N.Y.S. at 462. Accordingly, that Court held that a vendor under a Contract of Sale of real property was not required to accept a purchase money note and mortgage from the vendee's assignee.

■ It is well settled that when an executory contract is of such a nature as to be based upon personal services or skills, or upon personal trust or confidence, the debtor-in-possession or trustee is unable to assume or assign the rights of the bankrupt in such contract. 2 *Collier on Bankruptcy,* para. 365.05, p. 365–54 (15th ed. 1995). In this case, the Contract of Sale, with its purchase money financing provision, is akin to a personal service contract which involves a matter of personal trust and confidence between the original contracting parties. It is patently unfair in such cases to require a non-debtor third party to accept performance from anyone other than the original contract vendee, unless the contract clearly provides for the right to assign to another contract vendee. Thus, this Court will not require the Vendor to take back a purchase money note and mortgage from FI Properties, a corporation with no financial history formed a few short months ago for the sole purpose of accepting the assignment.

In view of the foregoing, the Debtor is precluded by 11 U.S.C. Section 365(c)(1) from assuming and assigning the Contract of Sale to FI Properties because New York law excuses the Vendor from accepting performance from FI Properties. More specifically, this Debtor cannot impose upon the Vendor the obligation of accepting as mortgagors anyone else but the Debtor, Michael Horak or an entity in which Michael Horak is the controlling stockholder. Under applicable non-bankruptcy law, the Vendor cannot be compelled to accept a purchase money note and mortgage from FI Properties, FI Phoenix and/or Friedle.

Since the Debtor is precluded from assuming and assigning the Contract of Sale pursuant to Section 365(c)(1) of the Bankruptcy Code, the Court need not reach the issue of whether Section 365(c)(2) is a bar to the assumption and assignment of the Contract of Sale.

## CONCLUSION

In conclusion, the Court holds that the Debtor is precluded from assuming and assigning the Contract of Sale because of the statutory prohibition contained in Section 365(c)(1) of the Bankruptcy Code. Thus, the Court hereby denies the Debtor's motion to assume and assign the Contract of Sale.

Thus, the Court hereby amends its July 19, 1996 Order by conclusively denying the Debtor's motion to assume and assign the Contract of Sale, with prejudice. Simultaneously herewith an Amended Order will be entered in accordance with this Decision.